## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | : | |
| **In re CARBON BLACK ANTITRUST** | : | **Master Docket No. 03-cv-10191-DPW** |
| **LITIGATION** | : | **(Lead Case)** |
| | : | |
| _____ | : | **MDL Docket No. 1543** |
| **This Document Relates To:** | : | |
| **ALL ACTIONS** | : | |
| | : | |
| _____ | : | |

### PETITION FOR AWARD OF INCENTIVE
### FEES TO THE SEVEN CLASS REPRESENTATIVES

As set forth in the Notice to the Class Members, Class Counsel hereby move for an Order authorizing the payment of $15,000 to each of the seven representatives of the Class.[1]  Despite being afforded the opportunity, no class member has objected to these requested incentive payments.

### I. Introduction

Class Counsel hereby move this Court to grant incentive payments in the total amount of $105,000 to the Class Representatives to be paid from the Settlement Funds.  Many Courts, including several Courts in this District, have awarded such incentive awards in the belief that they are necessary and appropriate to encourage and reward persons who use their time and efforts to advance claims on behalf of the class of injured entities or persons.  Such awards are particularly appropriate here since there was no preceding governmental action alleging a

---

[1]The seven Class Representatives are: Alco Industries, Inc.; Cardinal Color, Inc.; Ceradyne Corporation; Parker Hannifin Corporation; Polymerics, Inc.; Schlegel Corporation; and Technical Industrial, Inc.

conspiracy – only preliminary inquiries which were dropped midway through the litigation[2] –
and stepping forward could have jeopardized several of the Class Representatives' relationships
with their Carbon Black suppliers.  As described below, not only were the Class Representatives
active participants in the litigation, but they were subject to assertions that the lawsuits were
without basis and lacked evidentiary support, and there were challenges to their adequacy as
class representatives by defendants in the briefing before this Court.  Had the representatives not
assumed the burden of bringing and persevering in the prosecution of these lawsuits there would
have been no case at all.  This is especially true here where just a few cases were brought and
large tire manufacturers, such as Goodyear and Michelin, refrained from filing complaints.

## II.   The Award Requested is Richly Deserved and In Conformity With Case Law.

### (a)  Public Policy Favors an Incentive Award

When these lawsuits were brought, the Class Representatives were willing to step
forward and take a stand for themselves and others against these powerful defendants who not
only vigorously denied their liability but vehemently argued in seeking dismissal of the claims
that they were sued without good faith basis.  *See,* Defendants' Reply Brief in Support of
Defendants' Motion to Dismiss, filed August 5, 2004, p. 11 ("Plaintiffs have already imposed
significant burdens on defendants without any factual basis at all.  And now, after a lengthy and
burdensome fishing expedition has produced nothing to support these frivolous charges, they are
asking the court to let them fish some more[3] . . .").  The public policy considerations that favor

---

[2]*See* letters from the European Commission of May 30, 2005, and from the Department of
Justice of June 23 and 28, 2005, Exhibit "A" and "B" to docket entry 187 (filed July 6, 2005).

[3]An earlier motion to compel plaintiffs to answer defendants' interrogatory mentioned Rule 11,
Fed. R. Civ. P.  *See* docket entry 104 at pages 4 through 5.

institution and prosecution of this type of class action support an award to the plaintiffs who perform such roles and undertake such risks since it is well recognized that private class action suits are a primary weapon in the enforcement of federal antitrust laws.  *See, e.g., Hawaii v. Standard Oil Co.,* 405 U.S. 251, 266 (1972) where the Court stated:

> Rule 23 of the Federal Rules of Civil Procedure provides for class actions that may enhance the efficacy of private actions by permitting citizens to combine their limited resources to achieve a more powerful litigation posture.

In this Circuit, as well as other Circuits, courts in approving incentive awards have recognized the crucial role played by the Class Representatives.[4]  In *In re Relafen Antitrust Litig.*,231 F.R.D. 52, 98 (D.Mass. 2005), Judge Young stated:

> Incentive awards are recognized as serving an important function in promotion class action settlements, particularly where as here, the named plaintiffs participated actively in the litigation.  *In re Lupron*, 228 F.R.D. at 98 (citing *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 2005 U.S. Dist. LEXIS 2507, 2005 WL 388562, *31 (S.D.N.Y. Feb. 18, 2005)).  At least one district court in the First Circuit has addressed the appropriateness of such an award.  In *In re Compact Disc Antitrust Litig.*, the court noted that "because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit."  *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D.Me. 2003) (citing *Cook v. Niedert*, 142F.3d 1004, 1016 (7th Cir. 1998)).

Other cases have recognized the crucial role of the Class Representatives as well.  In *In re Lupron Mktg. & Sales Practices Litig.*, 2005 U.S. Dist. LEXIS 17456 (D. Mass. 2005), Judge Stearns noted, in awarding $100,000 in incentives payments that "courts 'routinely approve incentive awards to compensate named plaintiffs for the services they provided and the

---

[4] This Court's opinion in *Swack v. Credit Suisse*, 2006 U.S. Dist. LEXIS 95470 (D. Mass. 2006) denied an incentive payment because of the specific limitations on such awards under the PSLRA.  The Court noted that an award under that statute "must be distinguished from traditional 'compensation' or 'incentive' awards in other contexts . . . ."

risks they incurred during the course of the class action litigation.'" (*citing* in *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002). In *in re RMED International, Inc. v. Sloan's Supermarkets, Inc.*, 2003 U.S. Dist. LEXIS 8239 (S.D.N.Y 2003), Judge Leisure awarded $25,000 to the class representative out of a settlement of $975,000, reasoning that "incentive awards are given to compensate the named plaintiffs for the risks they have incurred by pursuing the class action and extra effort they have expended." *See also, In re Graphite Electrodes Antitrust Litigation*, MDL No. 1244, (E.D. Pa., Order of September 8, 2003) where the late Judge Weiner, in awarding incentive payments of $80,000 to each of the three Class Representatives found that "public policy favors an award of incentive payments" and that "such awards are routinely provided to the named plaintiffs for the services they provide and the risks they incur in pursuing litigation on behalf of the absent class members."; *Bradburn Parent Teacher Store v. 3M*, 2007 U.S. Dist. LEXIS 35899 (E.D. Pa. 2007) (same) (awarding $75,000 to the class representative); *In re Linerboard Antitrust Litig.*, 2004 WL 1221350 at *18 (E.D. Pa. 2004) ("Like the attorneys in this case, the class representatives have conferred benefits on all other class members, and they deserve to be compensated accordingly."); *Bussie v. Allmerica Financial Corp.*, 1999 WL 342042 at *3 (D. Mass. 1999) ("Courts consider . . . the important public policy of fostering enforcement of laws and rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves"); *In re Plastic Tableware Antitrust Litigation,* No. 94-CV-3564, 1995 WL 723175, at *2 (E.D. Pa. Dec. 4, 1998) ("Payments to class representatives may be considered a form of restitutionary relief

within the discretion of the trial court....They may also be treated as a reward for public service

and for the conferring of a benefit on the entire class."[5]).

In *Golden v. Shulman*, No. CV-85-3624, 1988 WL 144718 (E.D.N.Y. Sept.

30, 1988), the court awarded an incentive payment to a plaintiff in a securities class

action, reasoning as follows:

> In addition to the appointment as representative of a class,
> Golden...has been required to respond personally to the discovery
> requests of defendants, including document production...Through
> his shouldering of these responsibilities, Golden has benefitted all
> the members of the class.  Courts have recognized that named
> plaintiffs may be rewarded for taking on extra responsibilities of
> this sort.

*Id.* at *8 (citations omitted).

In *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000), the Court

granted a request for an incentive award equal to the tuition paid by the class representatives and

other plaintiffs initiating the case, in order to recognize the significant role played by each in

achieving the ultimate result.  *Id.* at 145 (citing *In re Southern Ohio Correctional Facility*, 175

F.R.D. 270, 272 (S.D. Ohio 1997)).  The Court noted that: "[c]ourts routinely approve incentive

awards to compensate named plaintiffs for the services they provide and the risks they incurred

during the course of the class action litigation" (citing numerous cases).  197 F.R.D. at 145.  *In*

---

[5] *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."); *In re Lease Oil Antitrust Litigation*, 186 F.R.D. 402, 449 (S.D. Tx. 1999) (recognizing that class representatives were entitled to additional compensation for their time and effort); *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ("Courts routinely approve incentive awards to compensate the named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."); *In re Domestic Air Transp. Antitrust Litigation,* 148 F.R.D. 297, 357 (N.D. Ga. 1993) ("The Court finds that incentive awards are appropriate to recognize the efforts of the representative plaintiffs to obtain recovery for the class.").

*Linney v. Cellular Alaska*, 1997 WL 450064 at *7 (N. D. Cal. 1997) the Court noted that "Incentive fees for Class Representatives serve much the same function as attorneys' fees do in the class action context: they provide the economic incentive necessary to ensure that meritorious actions are prosecuted."  Also in *In re Mego Financial Corp. Securities Litigation,* 213 F.3d 454 (9th Cir. 2000) the Ninth Circuit – citing as its primary authority Judge Broderick's decision awarding an incentive to the Class Representatives in *In re SmithKline Beckman Corp. Securities*[6] -- affirmed the propriety of an award of an incentive award to each of the class representatives.  The Seventh Circuit recognized the appropriateness of the incentive award in *In the Matter of Continental Illinois Securities Litigation,* 962 F.2d 566 (7th Cir. 1992).  In *In re F&M Distributors Inc. Securities Litigation,* No. 95-CV-71778, 1999 U.S. Dist. Lexis 11090 (E.D. Mich. June 29, 1999) the Court approved awards to each of the class representatives, finding such awards "common in class actions" and reasonable "due to the discovery and other burdens to which [the plaintiffs] were subjected, including having to give depositions and produce their records of securities transactions."

### (b)  The Class Representatives Have Expended Significant Time and Effort On Behalf of the Class, and Have Been Subject to Challenges

The seven lead plaintiffs here deserve compensation for the inconvenience they have borne to advance this litigation and for placing the class' interests above their own, especially in the face of defendants' repeated arguments that there was no basis for alleging a conspiracy. The plaintiff-representatives in this case were certainly not "figurehead" plaintiffs.  Each of the Class Representatives provided answers to interrogatories, and each of them searched for and

---

[6] 751 F.Supp. 525, 535 (E.D. Pa. 1990).

produced documents to the defendants. Each plaintiff expended time to meet with counsel to prepare for deposition, each was deposed, and Class Counsel were planning to call at least a few of the class representatives to testify at, if not attend, the upcoming trial in this case.

In addition to subjecting themselves to intrusive discovery by agreeing to serve as class representatives, the seven plaintiff-representatives here opened themselves up to potential challenges by defendants on a number of grounds. In other litigation, plaintiff-class representatives have been subject to a host of embarrassing personal attacks by defendants who argue that the Class Representatives are not adequate, or are not typical as required by Rule 23(a)(3) and (4) of the Federal Rules of Civil Procedure. Defendants' attacks often allege, among other things, lack of familiarity with the litigation, failure to understand the duties of the Class Representative and lack of veracity stemming from an inability to recall with precise accuracy events and conversations from years past.

In this litigation, to defendants' counsels' credit, the Class Representatives were not subject to any such personal attacks. There were, however, arguments about their ability to represent a class of purchasers of Carbon Black. As noted above, Defendants vigorously argued throughout the litigation that Plaintiffs had no basis in good faith for bringing the lawsuits. Defendants, in opposing class certification, argued against the adequacy of the Plaintiffs, asserting that they held interests antagonistic to certain other members of the class. In it opinion certifying the class, this Court rejected these arguments. *See, In re Carbon Black Antitrust Litig.*, 2005 U.S. Dist. LEXIS 660 (D. Mass 2005).

As this Court is aware, Defendants' arguments concerning the lack of evidentiary basis for the lawsuits continued through the summary judgment proceedings. Yet, the named

plaintiffs continued to persevere and pursue this litigation on behalf of the Class.

### (c)   Incentive Awards of $15,000 are Justified In Light of Other Such Awards

The Class Representatives in this case deserve special recognition.  Several of them are small purchasers which commenced a major litigation assault on their suppliers which may well have put them at substantial risk.  The first settlement in this case was not reached until after three years of litigation and at that point, the Class Representatives were still facing several more years of hard fought litigation, including a trial and appeals thereafter.

The amount of the incentive awards sought here are based upon the size of the class recovery achieved, the risks undertaken and the longevity of the litigation.  The seven incentive payments of $15,000 each, amounting to $105,000 total, comprise only 0.525% (slightly more than one-half of one percent) of the total settlements of $20,000,000 won by the Class. Compared to the size of the overall settlements, which are accruing interest, the incentive payments will be modest.

Courts in this district and elsewhere have in the past approved awards of this size, and even much greater, for plaintiffs who stepped forward as champions of the Class.  *See, e.g., In re Relafen Antitrust Litig.*,(Master File 1-12239, D. Mass) (Order of April 9, 2004 at paragraph 14, Exhibit "A", awarding $25,000 to the class representative); *In re Microcrystalline Antitrust Litig.*, MDL 1402, (E.D. Pa. 2006 Order of November 22, 2006, Exhibit "B") (awarding $25,000 to each of the eight class representatives); *In re NBR Antitrust Litig.*, (W.D. Pa. Order of June 5, 2006) (Exhibit "C") (same); *In re Insurance Brokerage Antitrust Litig.*, 2007 U.S. Dist. LEXIS 40729 (D.N.J. June 7, 2007) (incentive awards to 15 representatives totaling $150,000); *Bradburn Parent Teacher Store v. 3M*, 2007 U.S. Dist. LEXIS 35899 (E.D. Pa. 2007) (award of

$75,000 to the class representative); *Meijer Inc. v. 3M*, 2006 U.S. Dist. LEXIS 56744 (E.D. Pa. 2006) (award of $25,000 to the class representative); *In re Graphite Electrodes Antittrust Litigation*, MDL No. 1244, (E.D. Pa., Order of September 8, 2003) ($80,000 to each of the three Class Representatives); *In re Graphite Electrodes Antitrust Litigation,* (E.D. Pa. Order of March 6, 2000) (earlier award of $50,000 to each of seven plaintiffs); *Bogosian v. Gulf Oil Corp.*, 621 F.Supp. 27 (E.D. Pa. 1985) (approving an award of $20,000 to each of the two named plaintiffs); *In First Jersey Securities Inc.,* MDL No. 681 (E.D. Pa. 1989) ($24,000 award to the named plaintiff); *In re Revco Securities Litigation,* Nos. 851 & 89 CV 593, 1992 WL 118800 (N.D. Ohio May 06, 1992) (award of $200,000 appropriate because lead plaintiff Arsam had lost $514,000 on the investment and nothing would have prevented it from filing an individual action); *In re Revco Securities Litigation*, Civ. A. No. 1:89CV0593, 1993 WL 497188 (N.D. Ohio Sept. 14, 1993) (approving additional $90,000 incentive award for plaintiff's continuing efforts after initial award was approved); *In re Busiprone Antitrust Litigation,* MDL 1413 (S.D.N.Y., Order of April 7, 2003) (awarding $25,000 to the Class Representative[7]).

---

[7] *See also, In re Lorazepam & Clorazepate Antitrust Litigation*, 205 F.R.D. 369 (D.C.C. 2002) (aggregate incentive awards totaling .3% of each class' recovery); *Brotherton v. Cleveland*, 141 F.Supp. 2d 907 (S.D. Ohio 2001) ($50,000 bonus to plaintiff who was instrumental in bringing lawsuit; total settlement fund of $5.25 million); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240 (S.D. Ohio 1991) ($300,000 in the aggregate awarded out of a total settlement valued at approximately $50 million); *Roberts v. Texaco, Inc.,* 979 F.Supp. 185 (S.D.N.Y. 1997) (in discrimination case, approving awards to class representatives of $85,000, $50,000, three awards of $25,000, and one award of $2,500); *In re Domestic Air Antitrust Litigation,* 148 F.R.D. 297 (N.D. Ga. 1993) (awards to 42 class representatives totaling $142,500); *In re Cardizem CD Antitrust Litigation,* MDL No. 1278, (S.D. Mich., Order of Nov. 26, 2002) (award of $20,000 each to the Class Representatives).

## Conclusion

Based upon the arguments and facts set forth above, and the substantial benefits that the seven named plaintiffs have bestowed upon the class, Class Counsel respectfully request this Court grant the petition for incentive awards.

Dated:     September 11, 2007                     Respectfully submitted,


                                                   **/s/ Adam M. Stewart**
                                                   Thomas G. Shapiro BBO #454680
                                                   Adam Stewart BBO #661090
                                                   SHAPIRO HABER & URMY LLP
                                                   53 State Street
                                                   Boston, MA 02109
                                                   (617) 439-3939

                                                   ***Plaintiffs' Liaison Counsel***

                                                   H. Laddie Montague, Jr.
                                                   Martin I. Twersky
                                                   David Anziska
                                                   BERGER & MONTAGUE, P.C.
                                                   1622 Locust Street
                                                   Philadelphia, PA 19103
                                                   (215) 875-3000

                                                   Michael D. Hausfeld
                                                   Charles E. Tompkins
                                                   Reena Gambhir
                                                   COHEN, MILSTEING, HAUSFELD
                                                       & TOLL, PLLC
                                                   1100 New York Avenue, NW, Suite 500
                                                   Washington, DC 20005
                                                   (202) 408-4600

Steven O. Sidener
Joseph M. Barton
GOLD BENNETT CERA & SIDENER LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
(415) 777-2230

Bonny E. Sweeney
Christopher M. Burke
David W. Mitchell
COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
(619) 231-1058

*Plaintiffs' Co-Lead Counsel*

## Certificate of Service

     I hereby certify that the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on September 11, 2007.

**/s/ Adam M. Stewart**
Adam M. Stewart